10365

BEAUCHAMP v. WINNSBORO GRANITE CORPORATION
*ET AL.*

(101 S. E. 856.)

1. APPEAL AND ERROR—COURT WAIVES REQUIREMENT OF WRITTEN REQUESTS BY CONSIDERING ORAL REQUESTS.—The trial Court, by considering oral requests to charge and giving or refusing them on their merits, waives the rule requiring requests to be in writing, and the giving or refusal of such request can be reviewed.

2. APPEAL AND ERROR—REQUESTS TO CHARGE THAT EVIDENCE IS INSUFFICIENT IS REQUEST FOR A DIRECTED VERDICT.—A request to charge that the evidence is insufficient to warrant punitive damages is equivalent to a motion to direct a verdict for defendant on that issue, so that the sufficiency of the evidence to warrant punitive damages can be reviewed on appeal.

3. MASTER AND SERVANT—PUNITIVE DAMAGES RECOVERABLE FOR WILFUL OR RECKLESS ACTS OF SERVANTS.—A corporation may be held liable for punitive damages for wilful or reckless acts of its employees in hauling away a car of plaintiff's goods, though their action was contrary to the instructions of the manager.

4. MASTER AND SERVANT—MANAGER NOT LIABLE IN PUNITIVE DAMAGES FOR ACTS CONTRARY TO HIS INSTRUCTIONS.—The manager of a corporation is not liable in punitive damages for acts of employees of the corporation which were contrary to his instructions, though such acts might render the corporation liable, since a representative of the master is liable for the conduct of other servants only when he participates therein, actually or by directing their conduct.

5. APPEAL AND ERROR—NEW TRIAL MUST BE ORDERED WHERE VERDICT AND PUNITIVE DAMAGES IS ERRONEOUS AS TO ONE DEFENDANT.—Where a verdict, awarding both actual and punitive damages against a corporation and its manager, was erroneous as to the manager, a new trial must be granted, since the jury might not have found so large a verdict for punitive damages against the master alone.

Before PRINCE, J., Fairfield, Spring term, 1918. Reversed.

Action by R. L. Beauchamp against the Winnsboro Granite Corporation and another. Judgment for plaintiffs, and defendants appeal.

*Messrs. McDonald & McDonald,* for appellants, submit: *That it was error to charge the jury that they could not find*

*against one defendant alone, but must find a verdict against neither or both:* 93 S. C. 342; 65 S. C. 332; 65 S. C. 341-344; 68 S. C. 55; 75 S. C. 292; 1 Mills Con. Rep. 333; 65 S. C. 344; 94 S. C. 189-198.

*Messrs. J. W. Hanahan* and *G. W. Ragsdale,* for respondents, submit: *Error cannot be predicated upon the failure or refusal of the presiding Judge to charge requests not profered in writing and presented to the Court before the commencement of the argument:* 88 S. C. 162; 78 S. C. 398. *No error in refusing new trial on the ground of entire lack of evidence to support a verdict for punitive damages, there having been no motion for a nonsuit, or a motion to direct a verdict:* 79 S. C. 151; Circuit Court Rule 77. *The instruction that the verdict must be against both defendants or against neither was proper:* 104 S. C. 266-268; 106 S. C. 2; 89 S. C. 408; 109 S. C. 149. *The question of punitive damages was properly submitted to the jury:* 88 S. C. 14; 90 S. C. 308; 92 S. C. 72; 98 S. C. 89; 69 S. C. 166; 61 S. C. 189; 65 S. C. 330; 65 S. C. 430-438; Abbott's Trial Brief (3d Ed., p. 465).

January 27, 1920.

The opinion of the Court was delivered by MR. JUSTICE HYDRICK.

On September 24, 1915, three stonecutters and contractors —plaintiff, Hill, and Walling—who had previously done business on the premises of the Winnsboro Granite Corporation, hereinafter called the company, were loading certain tools, materials, and their household goods into cars provided by the Southern Railway Company, at Rockton, preparatory to moving to the State of Georgia. The defendant, Heyward, was the general manager of the company, which claimed a lien on the goods which Hill and Walling were about to ship out of the State. In the case of *Hill v. Winnsboro Granite Company,* recently filed, 99 S. E. 836, the company's right to seize Hill's goods was sustained.

The company has a railroad running from its plant at Rion to Rockton—about four miles—where it connects with the Southern Railway, and operates it with its own engines and servants.    Mr. Heyward testified that he directed the company's engineer to take his engine and crew to Rockton and bring to Rion the cars upon which Hill and Walling had loaded the tools and materials upon which the company had a lien, and that he expressly cautioned them not to take any of plaintiff's property, as he owed the company nothing. Nevertheless, the car into which plaintiff had loaded a part of his goods, which contained none of Hill or Walling's, was carried to Rion.    That was done after dark, and after plaintiff had suspended the loading of his car for the day, and had sealed and locked it.

Mr. Heyward further testified that, when the engine came to Rion with the cars, he went out to see that the goods seized were properly cared for, and, when he saw that plaintiff's car had been seized, he was greatly surprised, and would have sent it back that night, but the engineer said that he was sick.

The next morning, when plaintiff found that his car had been carried off, he became very indignant, and began at once to take steps to have it returned.    He called Mr. Heyward over the telephone to know why his car had been taken, and was told that it had been taken by mistake, and that it would be sent back to Rockton within a few hours.    According to plaintiff's testimony, it was returned to Rockton between 11 and 1 o'clock that day.    According to defendants', it was returned between 10 and 11 o'clock.

Upon these facts, plaintiff recovered judgment against both defendants for $25 actual damages, and $496 punitive damages; hence this appeal.

At the conclusion of his charge, the Court asked if counsel desired to suggest anything further, whereupon, the following took place:

"Mr. McDonald: Only this, your Honor.    I don't think your Honor referred to it.    Our claim is that this was taken

unintentionally through a mistake. I would like your Honor to charge the jury that, if that was the case, that would not warrant punitive damages. The Court: I charge you that, except with this modification: If the defendant company, through its management, sent out men to bring in a car, and they recklessly brought in two cars while acting within the scope of their employment, why, then the company would be responsible. Mr. McDonald: My request was with reference to this part of the testimony: Mr. Heyward's testimony was that he had not instructed them to bring in Beauchamp's car. Their instructions were to bring in the car with Hill's and Walling's goods, and they thought this car contained some of Walling's and Hill's goods, and took it in this way. The Court: That is a question of fact for the jury to determine from the evidence. If they acted within the scope of their agency as defendant's employees, they are responsible for it, and would be responsible for punitive damages if his subagents acted with a reckless disregard of the rights of the plaintiff. Otherwise, I charge you as requested by counsel. Mr. McDonald: If they believe Mr. Heyward's statement that he instructed them not to bring that car, yet they did it, yet, while the company might be liable, yet Mr. Heyward could not be liable for punitive damages, if these people violated his instructions. The Court: Well, Mr. Foreman, I cannot see it that way. If Mr. Heyward was the author of this wrong, if wrong has been done, if he was then representing his company, his company would not be liable, unless he was liable. If the wrong was done through the mandate of Mr. Heyward, the company could not be liable, unless Mr. Heyward was liable; so I cannot charge you that you can bring in a verdict against the company and not against Mr. Heyward. Mr. McDonald: I understand your Honor to hold they cannot find except against both defendants. The Court: If the mandate to take the car came through Mr. Heyward, the company is not responsible, unless Mr. Heyward is, and you will not find a verdict against the defendant corporation and leave Mr.

Heyward out, if the mandate went through Mr. Heyward. Mr. McDonald: I don't know that your Honor has told them yet that they can find against one and not against the other. The Court: I am not going to tell them that. Mr. McDonald: Well, that is what we wanted to find out."

Respondent contends that the errors assigned by appellant in the charge and refusals to charge contained in the above colloquy cannot be reviewed by this Court, because the requests were not proffered in writing and presented to the Court before the commencement of the argument, as required by the rules of Court, and cites cases in which we have sustained the trial Court in refusing requests not so presented. The cases cited are not applicable. Reference to them will show that the belated requests were refused by the Court, on the ground that they had not been presented in time. But, in those cases, if the Court had entertained them, and had given or refused them on their merits, the giving or refusal of them would have been reviewable. In this case, the Court invited verbal requests, and gave and refused such requests on their merits, thereby waiving the objection, as the Court clearly had the right to do, that they had not been presented in the manner and at the time prescribed by the rule.

Respondent contends, further, that the question whether there was any evidence to sustain the verdict for punitive damages cannot be considered by this Court, because there was no motion for a nonsuit or directed verdict on that issue, as required by rule 77 (73 S. E. 7) or the Circuit Court. We have often held that a request to charge that the evidence is insufficient to warrant the finding of punitive damages is equivalent to a motion to direct the verdict on that issue. Here, we have such a request which was considered by the Court, and, therefore, the refusal of it is reviewable.

However, there was no error in that part of the charge, and none in the modification of defendants' request upon

that issue, because the company may have been held liable for punitive damages on account of the reckless or wilful conduct of the engineer and his crew in seizing and carrying away plaintiff's car; and, as there was testimony that they had been expressly cautioned not to take it, the testimony was susceptible of more than one inference as to whether, in so doing, their conduct was only negligent, or the result of a mistake, or whether it was reckless and wilful.

But, while the company is liable for the conduct of the engine crew though they may have acted in violation of their orders and also for the conduct of the defendant, Heyward, if he was guilty of wrongdoing resulting in damage to plaintiff, because all of them were its agents or servants, nevertheless, the liability of the defendant, Heyward, depends upon his own conduct, and not upon that of the engine crew, especially if they violated his instructions, because they were not his servants. Evidently the Court fell into the error of regarding Heyward as the master, but he was not. He was only the representative of the master; and a representative of the master is not personally liable for the conduct of other agents or servants of the same master under him, unless he makes himself a participant therein in some way, either by actual participation, by directing their conduct, or otherwise. 7 Labatt's Master and Servant, section 2590. Therefore the jury should have been instructed, as requested, that, if they believed Mr. Heyward's testimony, they would not find against him; and, of course, it follows that the Court erred in charging the jury that they could not find against the company without finding against Heyward.

This conclusion is in harmony with all of our decisions on the point. In *Sparks v. Railroad Co.*, 104 S. C. 266, 88 S. E. 739, and *Jones v. Railway Co.*, 106 S. C. 20, 90 S. E. 183, it was held that where master and sevant are sued together for the same tort, and the master's liability is

predicated solely upon the conduct of the servant, a verdict alone against the master is illogical and cannot be sustained, because it in effect finds that the servant did no wrong, but, nevertheless, holds the master liable, when the only wrong charged against him is that of the servant; and, further, because the verdict acquitting the servant of wrongdoing deprives the master of his remedy over against the servant. In the Jones case it was said that in all the cases in which the master and servant were sued jointly for the same tort, and a verdict against the master alone had been sustained, there was evidence either of a joint tort of master and servant, or of some separate and independent delict of the master, or some other servant, for which the servant sued with the master was not liable.

For the reasons stated in *Webber v. Town of Jonesville,* 94 S. C. 189, 196, 77 S. E. 857, there must be a new trial, as the jury may not have found so large a verdict for punitive damages against the company alone, if they had been correctly instructed.

Judgment reversed.