James Algozino and Frank Algozino, Appellees, v. Welch Fruit Products Company.

On Appeal of Welch Fruit Products Company, and Black Kow Bottling Company of Chicago, Appellants.

Gen. No. 45,425.

Opinion filed November 27, 1951. Rehearing denied December 7, 1951. Released for publication January 3, 1952.

WINSTON, STRAWN, SHAW & BLACK, of Chicago, for appellants; PAUL H. MOORE, DOUGLAS C. MOIR, GEORGE B. CHRISTENSEN, EDWARD J. WENDROW, all of Chicago, of counsel.

JOSEPH BARBERA, and PETER V. FAZIO, both of Chicago, for appellees.

MR. PRESIDING JUSTICE TUOHY delivered the opinion of the court.

Defendants Welch Fruit Products Company and Black Kow Bottling Company, its subsidiary, appeal from judgments on verdicts for $5,500 for malicious prosecution and $1,500 for libel in favor of plaintiff James Algozino and $5,000 for malicious prosecution in favor of plaintiff Frank Algozino, brother of James.

Plaintiffs' amended complaint charged Welch Fruit Products Company, Black Kow Bottling Company, James P. Cullinan, Chicago So-Grape Beverage Company and Mary O. Welch, executrix of the estate of Thomas R. Welch, deceased, with breach of an oral distributorship contract with defendants, malicious prosecution, libel and slander. During trial the actions were severed, a separate trial granted defendant estate, and a not guilty verdict directed in favor of defendant So-Grape. At the close of all the evidence verdict was directed in favor of Welch Company and Black Kow on the slander charge, but motions were overruled for directed verdicts on the other charges. The verdicts returned found for the defendants on the breach of contract claim, found defendants not guilty as to Frank's claim for libel, guilty as to James' claim for libel, assessing damages thereon at $1,500, and guilty as to both plaintiffs' claims for malicious prosecution, and assessing each plaintiff's damages thereon at the sum of $10,000. Later, on motions for new trial, James at the court's prompting, remitted $4,500 of the malicious prosecution verdict and plaintiff Frank remitted $5,000 of his verdict, and judgments were entered accordingly. The defendant Cullinan is not a party to this appeal.

Defendant Welch Company in 1946 at the time of the grievances complained of was engaged in mixing and bottling a soft drink known as "Black Kow." Thomas R. Welch, who died on March 8, 1947, was president of the company. The manager in complete

137

charge of the plant during all the times complained of was defendant Cullinan, and the Algozinos were driver-salesmen who had been employed by Cullinan. In March of 1946, after they had worked for the company less than a year, the employment of both was terminated. On March 27, 1946, plaintiffs sold to the Welch Company, among other things, a Diamond T truck. The Welch Company later advertised the truck for sale and James Algozino called Cullinan on the phone and told him he was interested in its purchase. On Saturday, September 7, 1946, plaintiff James saw Cullinan at the Black Kow plant, and an agreement was made by which Welch Company was to sell him the truck for $700. The certificate of title which plaintiffs had theretofore delivered to Welch Company had never been formally transferred into the name of the company, but remained in plaintiffs' names.

Based on Cullinan's testimony before the grand jury plaintiffs were indicted for theft of the truck. Cullinan's statements to the state's attorney and, presumably, his testimony to the grand jury were to the effect that plaintiffs had answered the defendant Welch Company's advertisement for the sale of the truck, had come to the office on Saturday, September 7, 1946, picked up the certificate of title which had remained in plaintiffs' names from the time it was originally acquired from them by the company, and had driven the truck away without the knowledge or consent of any of the defendants; that on the following Monday, after the theft had been reported to the police, James Algozino returned the truck to the plant, but, in Cullinan's absence, by deceit had a young woman in the office type and sign a document acknowledging the receipt of $700 (which was not paid), in payment for the truck, thus again illegally procuring the truck, this time his possession fortified by a written

138

receipt unlawfully procured. Plaintiffs were acquitted on the trial of the criminal action.

On the trial of the present case Cullinan testified entirely at variance with his former statements. He corroborated in most all substantial particulars the testimony of plaintiffs, to the effect that he, Cullinan, had permitted plaintiffs to take the truck on Saturday; that the certificate of title had not been stolen; that his false testimony to the grand jury and false statements to the state's attorney were dictated by his employer, Thomas Welch; and that he perjured himself because of his desire to keep his job. On the trial he also admitted dictating the letter written to the repairman to whom the truck was taken by James for repairs, which letter is the basis for the libel action, as follows:

"September 10, 1946

"Orlando Auto Top Body Shop
1512 Roosevelt Road
Chicago, Illinois

"Dear Sir:

"You are hereby notified that 1937 Diamond T Truck, Motor #AE 583643 delivered to you, is the property of the undersigned, and that said truck was stolen prior to the time that it was placed in your possession.

"You are further notified to do no work whatsoever on said truck and we demand that you deliver up possession thereof at once.

"Black Kow Bottling, a division
of Welch Fruit Products Co.
by /s/ James P. Cullinan."

Cullinan was not represented by counsel at the trial. He was asked on cross-examination, "Do you have any agreement with counsel that if any judgment is entered against you in this proceeding he will not take action on it against you?" He replied, "No," further

139

stating: "I was party of a bad deal and I would like to get out of it and make it right. That is the only reason I am here at my own time and expense. . . ." Although judgments totaling $21,500 were entered against Cullinan, he filed no motion for new trial or judgment notwithstanding the verdict.

At the trial defendants made an offer to prove by Thomas Welch's sister-in-law, employed in the office of the Welch Company, that on September 7th Cullinan called and told her that the Algozinos had stolen the truck and the certificate of title and inquired whether he should advise Mr. Welch, and that she said, because of Welch's illness from a heart ailment, Cullinan should not bother him; that this witness would further testify to a conversation wherein the witness asked Cullinan for a written statement of the transaction; that Cullinan refused to give a statement, saying that he had gone over to the other side and that he had a release from plaintiffs' attorney who had told him he didn't have to make any statement. A further offer was made to prove by Mrs. Mary Welch that Cullinan said substantially the same thing to her about the promise of release of liability from plaintiffs' attorney. Both offers of proof were refused. The theory of the court in rejecting them was that because Cullinan was a codefendant called as the managing agent of the defendant company under section 60 of the Civil Practice Act (Ill. Rev. Stat. 1949, chap. 110, par. 184) [Jones Ill. Stats. Ann. 104.060], it was not competent for his codefendant to impeach him. Defendants maintain (1) that error was committed in rejecting these offers of proof and other documentary proof, (2) that the lower court should have directed a verdict on the libel charge since there was no proof to support it, and (3) that the verdicts were grossly excessive. Complaint also is made of certain instructions, but, by reason of the conclusions hereinafter set forth, it

140

will be unnecessary to consider the contested instructions.

██ We are persuaded from a review of this lengthy record that the jury's verdicts were influenced in major part by the testimony of the defendant Cullinan. Although he admitted perjury before the grand jury and insisted that he lied in his statement to the state's attorney, as well as to the grand jury stenographer before whom he appeared after testifying before the grand jury, he took the position at the trial that his perjury was dictated by his employer Thomas Welch, and that he, Cullinan, had since experienced a change of heart. The charges could not be denied by Welch, who had died before the trial. In view of the suspicious and unusual circumstances surrounding this testimony, fullest opportunity for cross-examination of Cullinan should have been afforded defendants. If Cullinan had called Welch's sister-in-law on the day of the alleged theft—as was sought to be proved—seeking permission to advise the ailing Welch that plaintiffs had stolen the truck, such conversation would tend to impeach Cullinan's story at the trial that Welch was aware of the theft and was the instigator of the design to falsely charge plaintiffs with theft. Furthermore, Cullinan's interest was of utmost importance as a gauge by which to measure the truth or falsity of his testimony at the trial. He was a defendant when the trial began. If the things he admitted were true, he could almost certainly expect a substantial verdict against himself. If, however, he had made an agreement with plaintiffs whereby in exchange for favorable testimony he would be released from any joint judgment that might be obtained against him, then a motive for his extremely suspicious testimony would appear which, if brought to the attention of the jury, might well have influenced a different result so far as his codefendants are concerned. We

141

think it was prejudicial error to refuse an offer of proof which so clearly tended to impeach and to prove interest on the part of the hostile witness.

█ No authorities are cited by plaintiffs to support their theory that because Cullinan, a defendant, was called under section 60 of the Civil Practice Act his codefendants were thereby precluded from establishing interest or impeaching him. Nor do we consider this to be a proper interpretation of the statute. Because plaintiffs did not in legal theory vouch for Cullinan's credibility, it by no means follows that his codefendants were bound to vouch for him. Wigmore on Evidence, Vol. 3, Third Edition, page 437, states: ''Where a co-party is called against his co-party, for the opponent, it seems clear that the co-party against whom he testified may impeach him.'' Analogously, our Supreme Court has held in a number of cases that it is error to deny or unduly restrict the cross-examination of an accomplice who testifies on behalf of the prosecution as to whether he has received, been promised, expects to obtain, or hopes for leniency or immunity in consideration of his testimony. *People v. McKinney,* 267 Ill. 454; *People v. Andrae,* 295 Ill. 445; *People v. Maggio,* 324 Ill. 516.

█ It is also urged by plaintiffs that the offers of proof were not properly made inasmuch as questions seeking to adduce the same were not formally tendered to the witnesses in the presence of the jury. It appears that the matter of admitting this testimony was argued before the court and that the attorney who tried the case for defendants was informed of the court's intention to refuse it admission. He was not only justified in making the offers in chambers out of the presence of the jury but was in the exercise of laudable caution in not bringing to the attention of the jury, by revealing questions, matters which the trial court had indicated were in his opinion incompetent. Cer-

tainly no prejudice resulted to plaintiffs as a result of the procedure followed.

██ We are further of the opinion that the letter upon which the cause of action for libel was predicated was not libelous as to plaintiff James Algozino, and that the lower court erred in failing to direct a verdict on this charge. Neither of the plaintiffs is mentioned in the letter, and no evidence was introduced to show that the recipient of the letter understood, or might reasonably have understood, it as accusing James Algozino of theft. Although it is true that a writing may constitute a libel against an individual without mentioning him by name, it must appear that some third party reasonably understood the writing to refer to such individual. In the instant case it is possible that the party to whom the letter was addressed might have understood it to refer to James, but there is no substantial evidence in the record to this effect. In the case of *Voris v. Street and Smith Publications,* 330 Ill. App. 409, this court held that where an alleged libelous publication does not name the plaintiff it must be alleged and proved that persons other than the plaintiff and defendant reasonably understood that the libel related to plaintiff before he can recover. In the absence of this proof the verdict should have been directed for the defendants on this charge.

██ During the trial of this case plaintiffs, in support of their claim for punitive damages, were permitted to introduce an agreement pursuant to which the defendant company sold the assets of its Black Kow division for $150,000. This evidence was admitted as a foundation for the ascertainment of punitive damages which plaintiffs sought. Subsequently defendants sought to show that Mary O. Welch, the Widow of Thomas Welch, sold all the stock of the Welch Company for $45,000, subject to an arrangement whereby she, rather than the company, would ultimate-

143

ly pay any judgment in favor of plaintiffs. Complaint is made of the refusal of the trial court to admit this agreement in evidence. We are of the opinion that the trial court did not err in this respect. The liability of a corporation to answer for punitive damages arises from the conduct of the corporation acting through its duly authorized agents. That a stockholder who was without knowledge of or participation in the tort will be adversely affected financially, if the judgment is such as to depress the value of the stock, affords no logical reason for limiting the rights of claimants. The case of *Spelina v. Sporry,* 279 Ill. App. 376, relied upon by defendants, is not in point. In that case there were two defendants. The court there indicated that there is judicial reluctance to allow judgments to stand which include a large measure of punitive damages, where evidence of the pecuniary circumstances of one defendant probably induced a large verdict against other defendants in moderate or humble circumstances. In the instant case Mary Welch was not a party to the litigation and she is affected by the result only because of the fact that she was a stockholder. While it is true that the wealth of a corporation is a competent circumstance to be proven where punitive damages are proper, it would result in endless collateral inquiry if the effect of such judgment on each individual stockholder were a valid consideration.

Inasmuch as the size of the verdicts was undoubtedly affected by the errors committed on the trial which will not recur, it is unnecessary to. comment upon their excessiveness.

For the foregoing reasons the judgments of the circuit court of Cook county are reversed and the cause remanded for a new trial.

*Judgments reversed and cause remanded.*

SCHWARTZ AND ROBSON, JJ., concur.