**Norma J. BRINER, Administrator of the Estate of David L. Briner, Deceased, Appellant,**

v.

**Dennis Lee HYSLOP and McLane Livestock Transport, Inc., Appellees.**

No. 68228.

Supreme Court of Iowa.

Aug. 17, 1983.

Edward J. Gallagher, Jr. and David R. Sheridan of Gallagher, Langlas & Gallaher, Waterloo, for appellant.

John T. Nolan and Marc B. Moen of Lucas, Nolan, Bohanan & Moen, Iowa City, for appellee Hyslop.

Max E. Kirk of Ball, Kirk & Holm, P.C., and James E. Walsh, Jr. of Clark, Butler & Walsh, Waterloo, for appellee McLane Livestock Transport, Inc.

SCHULTZ, Justice.

This appeal arises out of an automobile-truck accident which claimed the life of the driver of the automobile, David L. Briner. The administrator of Briner's estate brought a wrongful death action against both Dennis Hyslop and McLane Livestock Transport, Inc. (McLane), the driver and the owner of the truck, respectively. The case was tried to a jury which returned verdicts for compensatory and punitive damages against both defendants. The trial court entered judgment in accordance with the jury verdict, except that it entered judgment notwithstanding the verdict for McLane on the punitive damage award.

Plaintiff has appealed from the trial court's grant of judgment notwithstanding the verdict; McLane has cross-appealed on the award of compensatory damages; Hyslop has cross-appealed from the award of punitive damages against him. Of the many issues raised on this appeal we find the most troublesome concerns the test that should be applied to determine when a corporate employer may be held liable for punitive damages for the acts of an employee. Less troublesome issues will be set forth and discussed later in this opinion.

On November 7, 1979, Hyslop left Colorado and drove a McLane truck loaded with cattle to Sioux Center, Iowa. Another of McLane's employees, Leo Scowden, notified McLane at approximately 2:00 p.m. on November 8 that Hyslop had arrived in Sioux Center. McLane told Scowden that he and Hyslop were to begin driving to Waterloo. Later that evening Scowden and Hyslop stopped in Fort Dodge to allow Scowden to call McLane. McLane instructed them to go to Rowley, Iowa, to pick up a load of cattle early in the morning of November 9. While stopped in Fort Dodge Hyslop consumed several double scotches. He then got back in his truck and began driving to Rowley. Unfortunately, he fell asleep while driving and his truck drifted over the center line and collided with the oncoming Briner automobile.

As a result of this collision Hyslop was charged with and pleaded guilty to involuntary manslaughter based on his operating a motor vehicle while under the influence of alcohol or drugs, reckless driving, failure to have control, failure to yield one-half of the highway, failure to keep a log book, and operating a commercial vehicle for more hours than allowed by law.

Before commencement of the trial Hyslop admitted his negligence and removed this issue from the jury deliberation. McLane also admitted Hyslop's negligence, but sought to avoid liability by contending that Hyslop was not driving with McLane's consent because of his consumption of alcohol.

After the trial the jury returned a joint verdict for compensatory damages for $116,846.08 against both defendants and separate verdicts for punitive damages against Hyslop for $100,000 and against McLane for $150,000. The court subsequently granted a judgment notwithstanding the verdict for McLane on the punitive damage award and entered judgment for the plaintiff in conformance with the other verdicts.

I. *Punitive damage award against McLane.* In sustaining McLane's motion for judgment notwithstanding the verdict the trial court failed to give a reason for its ruling. This failure to comply with the direction contained in Iowa Rule of Civil Procedure 118 that motions involving separate grounds "shall be disposed of by separate rulings on each and not sustained generally" creates uncertainty about both the trial court's reasoning and the issues that should be considered on appeal.

We have admonished trial courts to comply with rule 118, *Greenwell v. Meredith Corp.,* 189 N.W.2d 901, 905 (Iowa 1971), given our reasons for requiring compliance, and indicated that noncompliance may be grounds for a reversal. *Oakleaf Country Club, Inc. v. Wilson,* 257 N.W.2d 739, 743 (Iowa 1977). We do not believe that a reversal for noncompliance is warranted here, but we shall confine our review to the two grounds urged by McLane in its motion for a directed verdict, as the motion for judgment notwithstanding must stand or fall on grounds urged therein. *Watson v. Lewis,* 272 N.W.2d 459, 461 (Iowa 1978).

The grounds raised in both motions are that (1) the trial court erred in adopting as the law of the case the rule which permits the assessment of punitive damages against a corporation for acts done by an employee in the course of his employment, rather than the rule set forth in the Restatement (Second) of Torts § 909 which permits such damages under more limited circumstances; and (2) there was insufficient evidence under either of these rules to present a sufficient factual issue to allow the issue of punitive damages against McLane to go to the jury. We shall address both issues, but we begin with an examination of the proper rule for allowance of punitive damages.

A. *Proper rule.* It is well established in Iowa under the doctrine of *respondeat superior* that a corporate employer may be liable for compensatory damages resulting from the negligent acts of employees committed within the scope of their employment even though the employer is without fault. *Frost v. Des Moines Still College of Osteopathy and Surgery,* 248 Iowa 294, 304–06, 79 N.W.2d 306, 314 (1957). It is less certain, however, under what circumstances an employer is liable for punitive damages for the willful acts of employees committed within the scope of employment.

Those authorities that have considered the issue are divided into two groups. One group holds the corporate employer liable for punitive damages whenever the employee's actions within the scope of employment make the employee liable. *See, e.g., Stroud v. Denny's Restaurant, Inc.,* 271 Or. 430, 532 P.2d 790 (1975). These authorities generally term their analysis as the liberal approach or the course of employment rule. J. Ghiardi and J. Kircher, *Punitive Damages Law and Practice* § 5.06 (1981). The other group of authorities finds the corporate employer liable for punitive damages only when the corporate employer wrongfully authorized, contributed to, or ratified the outrageous conduct which caused plaintiff's injury. *See, e.g., Mercury Motors Express, Inc. v. Smith,* 393 So.2d 545 (Fla. 1981). This rule is termed the complicity rule. Morris, *Punitive Damage in Personal Injury Cases,* 21 Ohio St.L.J. 216, 221 (1960). It is expressed by the Restatement (Second) of Agency § 217C and the nearly identical Restatement (Second) of Torts § 909, which states:

> Punitive damages can properly be awarded against a master or other principal because of an act by an agent if, but only if:
>
> (a) the principal authorized the doing and the manner of the act, or
>
> (b) the agent was unfit and the principal was reckless in employing him, or
>
> (c) the agent was employed in a managerial capacity and was acting in the scope of employment, or
>
> (d) the principal or the managerial agent of the principal ratified or approved the act.

Restatement (Second) of Torts § 909 (1979).

We have addressed this problem on previous occasions. Initially, we took a position consistent with the Restatement rule and required corporate complicity. *Dunshee v. Standard Oil Co.,* 165 Iowa 625, 146 N.W. 830 (1914). We expressed the view that "the principal cannot be held liable in exemplary damages for the wanton acts of the agent, unless it participated, either expressly or impliedly, or by conduct authorizing or approving the act, whether before or after it was committed." *Id.* at 630, 146 N.W. at 833. This rule was approved in *White v. International Textbook Co.,* 173 Iowa 192, 194, 155 N.W. 298, 299 (1915), and *Ashland*

*v. Lapiner Motor Co.,* 247 Iowa 596, 602, 75 N.W.2d 357, 360 (1956).

Our next reference to the issue appeared in *Claude v. Weaver Construction Co.,* 261 Iowa 1225, 158 N.W.2d 139 (1968). In that case the president of the corporation was actively involved in business operations and had authorized the controverted activity. Although the issue of corporate liability for exemplary damages was not disputed, the court stated:

> Error asserted in the case at bar is broad, but liability of a corporate entity, for punitive damages, is neither urged nor discussed by defendant. As a result we are not here called upon to consider or resolve that issue and do not do so. Stated otherwise, the question as to liability of a corporation for exemplary damages is not involved in this appeal. However, with regard to the foregoing *see Baltimore & P.R. Co. v. Fifth Baptist Church,* 108 U.S. 317, 2 S.Ct. 719, 726–727, 27 L.Ed. 739; *Kelite Products v. Binzel* (5 Cir.), 224 F.2d 131, 144; *Amos v. Prom, Inc.,* 115 F.Supp. 127, 137; *Toole v. Richardson-Merrell, Inc.,* 251 Cal.App.2d 689, 60 Cal.Rptr. 398, 414–415; *Algozino v. Welch Fruit Products Co.,* 345 Ill.App. 135, 102 N.E.2d 555, 560; 25 C.J.S. Damages § 125(4), page 1153; 19 C.J.S. Corporations § 1263, page 948; 39 Am.Jur., Nuisances, Section 32, page 313; 13 Am. Jur., Corporations, section 1130, page 1056; and Prosser, Law of Torts, Third Ed., Hornbook Series, page 12.

*Id.* at 1233, 158 N.W.2d at 145.

We returned to this issue in *Northrup v. Miles Homes, Inc.,* 204 N.W.2d 850 (Iowa 1973). The parties sharply disagree about the intention of the *Northrup* court. Plaintiff argues that in *Northrup* we discarded the "complicity" rule and adopted the "course of employment" rule. In that case the defendant corporation argued that punitive damages could not be assessed against a corporation. We quoted the above paragraph from *Claude* and then added:

> The result in *Claude* (affirmance of an award of exemplary damages against a corporation) and the above quoted language, coupled with an examination of the cited authorities, clearly indicates the movement of this court toward the prevailing rule. We now hold that a corporation may be assessed exemplary damages. Of course, to recover exemplary damages from a corporation for wrongful acts of its employees, the employees must have been acting within the course of, or in connection with, their duties or employment.

*Id.* at 858–59. While we clearly stated that a corporation may be liable for punitive damages, we were not faced in *Northrup* with the question of determining under what circumstances a corporation would be liable for punitive damages for the acts of an employee. Consequently, that issue was not examined in either *Claude* or *Northrup* and was only mentioned in *Northrup.*

Nevertheless, despite McLane's claims that our holding in *Northrup* did not adopt the more liberal rule, our subsequent decision in an action brought against a municipal corporation indicates otherwise. In *Young v. City of Des Moines,* 262 N.W.2d 612, 622 (Iowa 1978), a suit for unlawful arrest, we allowed punitive damages against a city for the acts of its police officers under the Municipal Tort Claims Act (Iowa Code chapter 613A) and stated that recovery "is determinable by application of the same legal principles as in cases against private corporations." We have not spoken often on that issue although we recently held a municipality liable for punitive damages for acts of its employees; however, in that case the operative misconduct was instigated by a city official with the concurrence and knowledge of the city council. *Dickerson v. Young,* 332 N.W.2d 93, 104–05 (Iowa 1983). As we noted in *Dickerson,* however, the legislature has recently provided that cities are to be immune from suits for punitive damages. 332 N.W.2d at 105; *see* Iowa Code § 613A.4(5) (1983). Likewise, Iowa Code section 25A.4 bars punitive damages in state tort claims. *Compare* Iowa Code § 25A.21 (1983).

Since *Northrup* was decided we have under special circumstances refused to allow punitive damages to be assessed against corporations. In *Rowen v. Le Mars Mutual Insurance Co.*, 282 N.W.2d 639, 662 (Iowa 1979), we did not permit punitive damages to be assessed against a mutual insurance company where innocent policyholders who had traditionally taken no part in management would have had to bear the loss. In *Blessum v. Howard County Board of Supervisors*, 295 N.W.2d 836, 850 (Iowa 1980), we approved the trial court's action in setting aside an award of punitive damages against a county board of supervisors to avoid a double recovery where two of the members of the board of supervisors were held liable for punitive damages and the third member did not participate in the wrongful conduct. We stated "[we] do not believe the same conduct of [the two participating board members] should cause punitive damages liability on the Board as an institution in addition to themselves." *Cf. Dickerson*, 332 N.W.2d at 104 (punitive damages not duplicative when both the mayor-councilman and the city held liable).

In none of these cases have we been called upon as we are here to address directly the question of a corporation's liability for punitive damages for the wrongful acts of an employee. Despite plaintiff's argument to the contrary, we did not do so in *Northrup*. In *Northrup* we commented on the cases cited in *Claude* and stated that these authorities "clearly indicate the movement of the court toward the prevailing rule." 204 N.W.2d at 858. *Northrup* does not necessarily indicate the course of employment rule is the prevailing rule. The reference to the "prevailing rule" was with regard to whether a corporation may be liable for punitive damages. Moreover, the result we reached in *Claude* would also have been reached if the court had applied the complicity rule. Indeed, most of the decisions cited in *Claude* either are in line with the complicity rule or have been overruled and replaced by the complicity rule. *See, e.g., Agarwal v. Johnson*, 25 Cal.3d 932, 160 Cal.Rptr. 141, 603 P.2d 58 (1979) (California Supreme Court recognized Restatement

(Second) § 909 as the law of that state); *Remeikis v. Boss & Phelps, Inc.*, 419 A.2d 986 (D.C.1980) (District of Columbia applies complicity rule); *Mattyasovszky v. West Towns Bus Co.*, 61 Ill.2d 31, 330 N.E.2d 509 (1975) (Illinois Supreme Court indicated approval of the complicity rule).

In light of the above we deem it appropriate to review our position. We will determine whether to state clearly what we may have intimated in *Northrup*, or whether to adopt a rule that is consistent with the Restatement. The pressure of *stare decisis* does not prevent us from reconsidering our judicial pronouncements and correcting or abandoning them when we believe the better rule is otherwise. *Young*, 262 N.W.2d at 615. This is especially true where, as here, the issue is fully before us for the first time and we are presented with excellent briefs and arguments.

Plaintiff correctly points out that some authorities suggest that the course of employment rule is the prevailing rule, *see, e.g.,* D. Dobbs, *Law of Remedies* § 3.9, at 205 (1973); 10 W. Fletcher, *Cyclopedia of Corporations* § 4906 (rev. 1978); W. Prosser, *Law of Torts* § 2, at 12 n. 93 (4th ed. 1971); *American Society of Mechanical Engineers v. Hydrolevel Corp.*, 456 U.S. 556, 575 n. 14, 102 S.Ct. 1935, 1947 n. 14, 72 L.Ed.2d 330, 345 n. 14 (1982); other commentators suggest that this is not necessarily true. *See, e.g.,* Ellis, *Punitive Damages in Iowa Law: A Critical Assessment*, 66 Iowa L.Rev. 1005, 1041 n. 246 (1981). Our research shows that the course of employment rule is not the rule in a majority of state courts. In fact, more states have adopted the Restatement rule or a rule more restrictive than the Restatement rule than have endorsed the course of employment rule.

Of the fifty states and the District of Columbia, twenty-two states follow either the Restatement or a more restrictive rule; twenty states follow the course of employment rule; four states do not allow punitive damages; four states have not addressed the issue; and the rule in Iowa is in question.

The twenty states which follow the course of employment rule are: *Standard Oil Co. of Kentucky v. Gunn,* 234 Ala. 598, 176 So. 332 (1937) (oil company's agent sold adulterated oil); *Western Coach Corp. v. Vaughn,* 9 Ariz.App. 336, 452 P.2d 117 (1969) (scope of employment); *Miller v. Blanton,* 213 Ark. 246, 210 S.W.2d 293 (1948) (intoxicated driver in auto accident); *Ford v. Charles Warner Co.,* 15 Del. (Marv.) 88, 37 A. 39 (1893) (one commentator says no authority on point); *Atlantic Greyhound Corp. v. Austin,* 72 Ga.App. 289, 33 S.E.2d 718 (1945) (common carrier); *Hibschman Pontiac, Inc. v. Batchelor,* 266 Ind. 310, 362 N.E.2d 845 (1977) (all acts of corporate agent attributable to corporation); *Wheeler & Wilson Manufacturing Co. v. Boyce,* 36 Kan. 350, 13 P. 609 (1887); (more recent decisions cloud the issue); *Memphis & Cincinnati Packet Co. v. Nagel,* 97 Ky. 9, 29 S.W. 743 (1895) (common carrier); *Goddard v. Grand Trunk Railway of Canada,* 57 Me. 202, 223–24 (1869) (common carrier); *Embrey v. Holly,* 293 Md. 128, 442 A.2d 966 (1982) (defamation); *Lucas v. Michigan Central Railroad Co.,* 98 Mich. 1, 56 N.W. 1039 (1893) (common carrier); *Sandifer Oil Co. v. Drew,* 220 Miss. 609, 71 So.2d 752 (1954); *Rinker v. Ford Motor Co.,* 567 S.W.2d 655 (Mo.App.1978) (test drive of defective automobile); *Rickman v. Safeway Stores,* 124 Mont. 451, 227 P.2d 607 (1951) (but Prosser reads this case to endorse the complicity rule); *Clemmons v. Life Insurance Co. of Georgia,* 274 N.C. 416, 163 S.E.2d 761 (1968); *Kurn v. Radencic,* 193 Okl. 126, 141 P.2d 580 (1943) (railroad agent beat passenger); *Stroud v. Denny's Restaurant, Inc.,* 271 Ore. 430, 532 P.2d 790 (1975) (adopted § 909 of the Restatement (Second), but rejected distinction between managerial and nonmanagerial employees); *Chuy v. Philadelphia Eagles Football Club,* 595 F.2d 1265, 1278 (3d Cir.1979) (citing Pennsylvania law, including *Gerlach v. Pittsburgh Railways Co.,* 94 Pa.Super. 121, 133 (1928)); *Beauchamp v. Winnsboro Granite Corp.,* 113 S.C. 522, 101 S.E. 856 (1920); *Odum v. Gray,* 508 S.W.2d 526, 533 (Tenn.1974) (need for ratification expressly rejected).

The states which follow either the Restatement or a more restrictive rule are: *Agarwal v. Johnson,* 25 Cal.3d 932, 160 Cal. Rptr. 141, 603 P.2d 58 (1979) (recognized § 909 as law of the state); *Holland Furnace Co. v. Robson,* 157 Colo. 347, 402 P.2d 628 (1965) (citing Restatement (Second) of Agency § 217C); *Maisenbacker v. Society Concordia,* 71 Conn. 369, 42 A. 67 (1899); *Remeikis v. Boss & Phelps, Inc.,* 419 A.2d 986 (D.C.1980) (complicity rule); *Mercury Motors Express, Inc. v. Smith,* 393 So.2d 545 (Fla.1981) (abandoned course of employment rule in facts similar to our case); *Jenkins v. Whittaker Corp.,* 551 F.Supp. 110 (D.Haw.1982) (relying on Hawaii law); *Openshaw v. Oregon Automobile Insurance Co.,* 94 Idaho 335, 487 P.2d 929 (1971) (citing Restatement); *Pendowski v. Patent Scaffolding Co.,* 89 Ill.App.3d 484, 44 Ill.Dec. 544, 411 N.E.2d 910, 913 (Ill.App.1980); Minn.Stat. § 549.20(2) (1982) (enactment of § 909); *Summa Corp. v. Greenspun,* 96 Nev. 247, 607 P.2d 569 (1980) (corporation not liable for Howard Hughes' acts without authorization or ratification); *Winkler v. Hartford Accident and Indemnity Co.,* 66 N.J.Super 22, 168 A.2d 418 (1961) (conversion); *Samedan Oil Co. v. Neeld,* 91 N.M. 599, 577 P.2d 1245 (1978); *Roginsky v. Richardson-Merrell, Inc.,* 378 F.2d 832 (2d Cir. 1967) (citing law of New York); *Mahanna v. Westland Oil Co.,* 107 N.W.2d 353 (N.D. 1960) (wrongful repossession of truck); *Gray v. Allison Division, General Motors Corp.,* 52 Ohio App.2d 348, 370 N.E.2d 747 (1977) (defamation); *Conti v. Walter Winters, Inc.,* 86 R.I. 456, 136 A.2d 622 (1957) (deceit in sale of automobile); *Fisher v. Carrousel Motor Hotel, Inc.,* 424 S.W.2d 627 (Tex.1967) (battery of bar patron); *Shortle v. Central Vermont Public Service Corp.,* 137 Vt. 32, 399 A.2d 517 (1979) (disconnection of electrical service); *Jordan v. Melville Shoe Corp.,* 150 Va. 101, 142 S.E. 387 (1928); *Great Atlantic & Pacific Tea Co. v. Lethcoe,* 279 F.2d 948 (4th Cir.1960) (construing law of West Virginia in false imprisonment case); *Garcia v. Sampsons, Inc.,* 10 Wis.2d 515, 103 N.W.2d 565 (1960) (as-

sault); *Campen v. Stone,* 635 P.2d 1121 (Wyo.1981) (auto insurer).

The four states in which there is no authority are Alaska, New Hampshire, South Dakota, and Utah. The Alaska Supreme Court did indicate in a footnote that "Restatement (Second) of Torts § 909 discusses the issue of the liability of the employer for acts of the agent." *Clary Insurance Agency v. Doyle,* 620 P.2d 194, 201 n. 11 (Alaska 1980). The four states without punitive damages are Louisiana, Massachusetts, Nebraska, and Washington. Ghiardi & Kircher, Table 5–1, at 140.

Summarizing our research, we find that the jurisdictions are nearly evenly split between the two rules; we find no basis for the assertions that the course of employment rule is the prevailing rule. Consequently, the justifications for either rule assume a more dominant feature in our determination.

The general justification ascribed for the allowance of punitive damages is that they serve as punishment to the wrongdoer and as a deterrent to others. *Rowen,* 282 N.W.2d at 661; *Claude,* 261 Iowa at 1229, 158 N.W.2d at 143. Compensation of the victim is not a purpose, *Team Central, Inc. v. Teamco, Inc.,* 271 N.W.2d 914, 923 (Iowa 1978), for the victim receives punitive damages only by grace and gratuity of the law, *Claude,* 261 Iowa at 1230, 158 N.W.2d at 143. Punishment is a valid justification for punitive damages where the corporation is at fault, but with the course of employment rule, the one punished may be without fault and would be held liable merely on the basis of its role as employer. Thus, the major justification for the course of employment rule must be deterrence. Prosser at § 2. Even though it may be argued that this goal of deterrence is adequately met by the threat of compensatory damages, C. McCormick, *Handbook of the Law of Damages* § 80 (1935), we will assume that punitive damages are needed to deter undesirable conduct. It is obvious, however, that there can be no effective deterrence unless there is some conduct which can be deterred. Thus, if an employer is only vicariously

liable and could have done nothing to prevent the misconduct of its employee, it seems of little value to award punitive damages against the employer. In many instances there is probably little that an employer can do to prevent the employee from committing outrageous torts. As one court found:

> The ability to better control the actions of the employee through greater supervision is often illusory.... [E]mployees may perform their duties where direct supervision is impossible. Further, increased supervision may well be ineffective to prevent the occurrence of certain torts for which punitive damages may be assessed. Thus society's interest in the preservation of the social order through punishment and deterrence may frequently not be advanced when punitive damages are assessed vicariously against the corporate master.

*Tolle v. Interstate Systems Truck Lines, Inc.,* 42 Ill.App.3d 771, 1 Ill.Dec. 437, 356 N.E.2d 625, 627 (1976). *Accord,* Note, *The Assessment of Damages Against an Entrepreneur for Malicious Torts of His Employees,* 70 Yale L.J. 1296 (1961).

We have not previously suggested a rationale for assessing punitive damages against a corporation for the acts of an employee. We did discuss the deterrence element in *Young,* however, and although this discussion was centered on the wisdom of assessing punitive damages against a municipality, it is relevant to the private corporation. 262 N.W.2d at 621–22. We stated in *Young* that "if a governmental subdivision be held answerable in punitive damages, more care will go into the selection and training of its agents and employees." *Id.*

This statement is too broad. To the extent that it appears that a corporation might have been able to prevent wrongful conduct by an employee, the corporation should be liable for punitive damages. Indeed, the threat of punitive damages should be an incentive to the corporation to take precautions with its employees. If, on the other hand, the corporation could have done

nothing to prevent the employee's wrongful conduct, punitive damages can have little deterrent effect, either to that corporation or as an example to other employers. This distinction is recognized by the complicity rule which in assessing punitive damages for reckless hiring or retaining of an unfit employee provides an incentive for taking care in selecting and training personnel. Restatement (Second) of Torts § 909(A); *Montgomery Ward & Co. v. Marvin Riggs Co.,* 584 S.W.2d 863, 866–67 (Tex.Civ.App. 1979) (employer grossly negligent in allowing unfit employee to operate truck on ground of negligent entrustment).

Plaintiff also claims justification for the more liberal rule because of the difficulty experienced in proving authorization or ratification on the part of the corporate employer. Plaintiff cites *Embrey v. Holly,* 293 Md. 128, 442 A.2d 966, 970–71 (App.1982), which quotes colorful language from *Goddard v. Grand Trunk Railway,* 57 Me. 202, 222–23 (1869), one of the first judicial considerations of the issue:

> A corporation is an imaginary being. It has no mind but the mind of its servants; it has no voice but the voice of its servants; and it has no hands with which to act but the hands of its servants. All its schemes of mischief, as well as its schemes of public enterprise, are conceived by human minds and executed by human hands; and these minds and hands are its servants' minds and hands. All attempts, therefore, to distinguish between the guilt of the servant and the guilt of the corporation; or the malice of the servant and the malice of the corporation; or the punishment of the servant and the punishment of the corporation, is sheer nonsense; and only tends to confuse the mind and confound the judgment. Neither guilt, malice, nor suffering is predicable of this ideal existence, called a corporation. And yet under cover of its name and authority, there is in fact as much wickedness, and as much that is deserving of punishment, as can

be found anywhere else. And since these ideal existences can neither be hung, imprisoned, whipped, or put in the stocks,— since in fact no corrective influence can be brought to bear upon them except that of pecuniary loss,—it does seem to us that the doctrine of exemplary damages is more beneficial in its application to them, than in its application to natural persons.

We find this argument more appropriate for claims that corporations should be held liable for punitive damages than for the rule that defines when a corporation is liable. Difficulty in proof by an injured party is a legitimate concern. This concern is closely allied with the merit of simplicity found in the course of employment rule. Today, however, modern discovery rules are available to aid litigants in this respect. Moreover, the Restatement rule is also relatively straightforward and fairly easy to apply. *Campen,* 635 P.2d at 1125.

Furthermore, while the complicity rule may be a more conservative approach, it is still a wide-ranging rule. We have little doubt that jury questions will be made and that juries will find verdicts that punish employers. The complicity rule is not limited solely to employee conduct that is expressly authorized by the corporation. Instead, the complicity rule extends employer liability to employee conduct which it would be difficult to show was authorized, but for which the employer is at least partially blamesworthy because he employed an unfit person. Note, *Liability of Employers for Punitive Damages Resulting from Acts of Employees,* 54 Chi-Kent L.Rev. 829 (1978). The rule, as Professor Morris stated, "wisely protects corporations from vicarious liability for punitive damages when a properly supervised and disciplined employee acts outrageously; and it wisely allows for punitive damage awards against some corporations whose institutional conscience should be aroused." 21 Ohio St.L.J. at 222.

There is little justification for awarding punitive damages against an innocent par-

ty, but it is reasonable to punish an employer for the reckless employment or retention of an employee, the ratification or approval of outrageous acts, or for outrageous acts performed by an employee acting in a managerial capacity. This is the rationale expressed by the drafters of the Restatement of Torts and we believe this rationale is consistent with the concern we expressed against punishing innocent policyholders in *Rowen*, 282 N.W.2d 639.

We conclude that the Restatement rule is more consistent with the purpose of punitive damages than is the course of employment rule. Although there are arguments in favor of the course of employment rule, the weakening of the deterrence effect, the increase in the cost of legitimate activities, and the injustice of punishing the innocent, all outweigh whatever benefits the course of employment rule might present. Indeed, other jurisdictions have recently adopted this view. *Mercury Motors Express, Inc. v. Smith*, 393 So.2d 545 (Fla.1981); *Campen v. Stone*, 635 P.2d 1121 (Wyo.1981). Thus, we hold the Restatement rule is the proper rule to apply when determining corporate liability for punitive damages for the acts of an employee.

II. *Substantial evidence.* McLane maintains that there is insufficient evidence to present a fact issue to allow the issue of punitive damages to go to the jury under either the Restatement or course of employment rules. We determine that although there is sufficient evidence to provide a factual issue under either rule, we need only discuss this issue under the Restatement rule.

 Under the Restatement rule an employer may be responsible for punitive damage as a result of the principal's own conduct or because of the conduct of an employee who is in a managerial capacity. § 909 comment b. No argument was made that Hyslop was in a managerial capacity, nor was there any evidence that McLane was reckless in hiring or retaining Hyslop,

or that it ratified or approved of his acts. The remaining issue is whether under subparagraph a of section 909 McLane authorized the doing and the manner of Hyslop's acts.

McLane attempts to narrow the issue concerning the employee's wrongful acts to Hyslop's intoxication. It then contends that the undisputed evidence is that McLane did not authorize this intoxication. It argues that the trial court erred by allowing an amendment to conform to the proof that allowed considerations of acts other than intoxication and in failing to give a requested instruction which limited the finding of willful and wantonness to Hyslop's intoxication. We do not agree with McLane's assertions. Among other evidence is Hyslop's contention that he drifted over the center line of the highway into Briner's path because he fell asleep. In addition, a witness indicated that the Briner car took evasive action and drove onto the shoulder, but that Hyslop swerved onto the shoulder and hit the car. Hyslop also testified that except for a nap of about an hour, he had not slept for some thirty hours. Moreover, Hyslop had in his possession amphetamine and caffeine pills and he admitted to taking them at various times during his trip.

There was also evidence that McLane was aware of its employees' driving and sleeping habits but did not supervise them. The evidence shows that the employer knew or should have known of its employees' sleeping habits because of their phone calls and by examining their gas and motel slips. McLane had no set schedules or guidelines for its drivers. Indeed, J.P. McLane testified that whether Dennis Hyslop drove for thirty hours with less than an hour of sleep was Hyslop's choice. In addition, McLane did not have any established time for reviewing the logs kept by its drivers and one-hundred-twenty days could pass before the drivers' logs were reviewed. McLane knew that Hyslop had not kept a log for the three weeks prior to his collision and that he had previously failed to keep a log.

Not only did McLane fail to supervise his employees' driving and sleeping habits, it provided the employees with an incentive to work long hours without getting sufficient sleep. McLane's payment system paid the drivers a percentage of the gross truck revenue. Thus the greater the number of truckloads, the greater the amount of money earned. There is evidence that if the drivers were unable to make it to a loading site at a certain time of the day, the loading of the cattle would be postponed for another day as the cattle must be weighed in the morning. Thus, there was great incentive to arrive by early morning.

Prior to the commencement of trial plaintiff amended her petition to urge that Hyslop was negligent in driving his truck for consecutive periods of time in excess of that authorized under Iowa Code section 321.225. This section provides that no person shall operate a commercial vehicle for hire for more than a period of twelve hours out of any period of twenty-four hours upon the highway without being relieved from duty for either ten or eight hours depending on whether the driving was consecutive. Iowa Code section 321.226 prohibits an employer from allowing its drivers to violate section 321.225. The question is whether a violation of this provision, along with other violations of provisions regarding lookout, control, speed, yielding the right of way, and traveling on the right-hand side of the highway, may amount to conduct that gives the jury discretion to award punitive damages.

The act of falling asleep generally would not constitute conduct that would allow punitive damages. In this case, however, the facts are extreme. The length of driving time is so excessive and is accompanied by the driver's use of stimulants, indicating that the driver knew of his condition and persisted in driving despite the danger. Such conscious and unintentional conduct is substantial evidence of a wanton and willful disregard for the safety of others.

It is also apparent that McLane or its managing agents were fully aware of the habits of their drivers, including Hyslop. McLane's utter lack of supervision and training, coupled with the disregard for the action of the employees, is sufficient evidence to make a jury question of whether it authorized the doing and the manner of the driving in question.

We conclude that a jury question was engendered as to whether McLane should have punitive damages awarded against it under the Restatement rule. Thus, we reverse the grant of a judgment notwithstanding the verdict in favor of McLane. The trial judge should have ordered a new trial under the proper rule as set out in division I of this opinion.

In view of our determination that a new trial must be ordered under the theory outlined in the Restatement, we need not address McLane's contentions concerning irreconcilable verdicts. The special verdict and general verdict were arrived at by the jury after they were instructed under the course of employment rule, rather than the complicity rule. The verdict is no longer effective.

III. *McLane's cross-appeal.* In its cross-appeal seeking a reversal of the judgment for compensatory damages McLane claims the trial court erred in two respects: (1) in admitting into evidence over relevancy objections certain photographs and the portions of the testimony of two witnesses; and (2) in instructing the jury as a matter of law that plaintiff was entitled to compensatory damages.

Plaintiff contends that we are without jurisdiction to address these issues because McLane failed to file a notice of cross-appeal within the period required by Iowa Rules of Appellate Procedure 5(a) and 82(d). We conclude after a thorough review of the evidence and affidavits that McLane did file a timely notice of cross-appeal.

A. *Relevancy.* McLane argues that the trial court erred in admitting into evidence photographs of the scene of the accident and the condition of the vehicles subsequent

to the accident. McLane also contends that the trial court erred in allowing Sergeant Mathers and Patty Morrill, the passenger in the Briner vehicle, to testify. In each instance McLane preserved error with its objection that the evidence was irrelevant to any issue of the controversy.

Evidence is relevant if it renders the existence of a fact more probable or less probable with it than without it. *Carson v. Mulnix,* 263 N.W.2d 701, 706 (1978). The basic test of relevancy is the question whether the challenged evidence makes the desired inference more probable than it would be without the evidence. *Anderson v. Low Rent Housing Commission of Muscatine,* 304 N.W.2d 239, 252 (Iowa 1981). The evidence must be probative and tend to establish a material proposition. *Id.* Questions of relevancy are for the trial court to resolve. *Id.*

McLane points out that Hyslop had admitted liability and contested only the damages issue. McLane claimed the only issues remaining were whether the truck was driven with its consent and whether it should be assessed punitive damages. With negligence no longer an issue, McLane claims that the photographs and testimony were irrelevant. McLane ignores the fact that plaintiff must prove the outrageous conduct of the defendant. The photographs and the witnesses' testimony assisted the jury in determining the specifics of Hyslop's driving conduct and how the collision took place. These facts show the nature, extent, and enormity of the wrong. They are additional circumstantial evidence of the intent of the party committing the act. We find no abuse of discretion on the part of the trial court in the admission of this evidence.

B. *Consent.* Iowa Code section 321.493 provides: "In all cases where damage is done by any motor vehicle by reason of negligence of the driver, and driven with the consent of the owner, the owner of the motor vehicle shall be liable for such damage."

McLane admits that it owned the truck and that Hyslop was negligent. Consequently, although the burden of proof remains with the plaintiff, there is a presumption that Hyslop was driving with McLane's consent, *Abel v. Dodge,* 261 Iowa 1, 4, 152 N.W.2d 823, 825 (1967), and there must be a sufficient showing to the contrary if the owner would avoid that finding. *Bridges v. Welzien,* 231 Iowa 6, 8, 300 N.W. 659, 661 (1941). There is no dispute that McLane consented to Hyslop driving the truck to Rowley, Iowa. McLane now argues, however, that it did not consent to Hyslop driving the truck while he was intoxicated. It contends that the issue of consent should have been submitted to the jury and that the district court erred in instructing the jury to return a verdict for compensatory damages against McLane.

If the owner of the motor vehicle does not oppose the inference of consent with evidence, then plaintiff prevails and the issue need not be submitted to the jury. The record shows the following:

(1) Hyslop testified he knew it was against the rules to drive when he was drinking.

(2) McLane testified that it is against company rules to drink on the job.

(3) McLane testified that its drivers take the American Trucking Test which refers to the ICC and DOT rules against drinking.

(4) McLane testified that Hyslop was terminated and Scowden disciplined as a result of the drinking.

It is arguable that McLane presented sufficient evidence to create a fact question on whether Hyslop was informed that the company had a rule against drinking while driving. Even if he had been so informed, however, this evidence does not allow McLane to escape liability for compensatory damages under the owners liability statute. An owner can limit his liability for the negligence of the driver of his motor vehicle by making his consent conditional.

By prescribing the time, place, or purpose for which the vehicle can be used, the owner can escape liability if the driver deviates materially from the scope of the consent. *Usher v. Stafford,* 227 Iowa 443, 448–49, 288 N.W. 432, 435 (1939); *Robinson v. Shell Petroleum Corp.,* 217 Iowa 1252, 251 N.W. 613 (1934). However, the owner generally cannot avoid such liability for a mere deviation from instruction on the manner which the vehicle is used. 60A C.J.S. *Motor Vehicles* § 442(6)(b), at 1065 (1969). For example, the owner cannot escape liability by stating that if the driver exceeds the speed limit he is then driving without permission. Any other conclusion would allow the owner to escape liability in nearly every case by showing that some authority was violated. 7A Am.Jur.2d *Automobiles and Highway Traffic* § 677, at 911 (1980).

■ We conclude that under section 321.493 it is justifiable to distinguish violations of restrictions on time, place, or purpose of the use of the vehicle from a restriction on manner of use. The purpose of the statute is to protect an innocent third party from the careless operation of a motor vehicle and to make the owner responsible for the negligence of one to whom the owner entrusted its operation. *See Stuart v. Pilgrim,* 247 Iowa 709, 715, 74 N.W.2d 212, 215 (1956). This entrustment can reasonably be conditioned on time, place, or purpose without undermining the purpose of section 321.493. However, if we allowed the owner to terminate his consent solely on the basis of the manner of driving we would subvert the purpose of the statute. Driving after drinking is a manner of driving and McLane is unable to condition its consent on its drivers' not driving while intoxicated.

IV. *Hyslop's contentions.* Defendant Hyslop filed a cross-appeal containing two issues: (1) whether punitive damages are recoverable in wrongful death actions in Iowa; and (2) whether the trial court abused its discretion in refusing to sever the issues of compensatory and punitive damages?

A. *Submission of punitive damages.* Hyslop invites this court to overrule our conclusion in *Berenger v. Frink,* 314 N.W.2d 388 (Iowa 1982), that punitive damages are recoverable in wrongful death actions in Iowa. We decline the invitation.

■ We also decline to overturn well-established precedent that a party may be assessed punitive damages in a civil action even though he has pleaded guilty or has been convicted of a crime. *Hauser v. Griffith,* 102 Iowa 215, 71 N.W. 223 (1897); *Hendrickson v. Kingsbury,* 21 Iowa 379 (1866). We find no Iowa cases to the contrary.

Hyslop also contends that he was denied his rights against self-incrimination under the fifth and fourteenth amendments to the United States Constitution. This issue was not presented to the trial court and cannot be considered on this appeal. *State v. Windsor,* 316 N.W.2d 684, 688 (Iowa 1982).

■ B. *Severance.* Iowa Rule of Civil Procedure 186 expressly authorizes the trial court to separate issues for trial "to avoid prejudice." Refusal to separate is a matter of the trial court's discretion and will be disturbed only if the court abused that discretion. *Barnard v. Cedar Rapids City Cab Co.,* 257 Iowa 734, 752, 133 N.W.2d 884, 896 (1965). There is no abuse of discretion unless "that discretion was exercised on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *State v. Morrison,* 323 N.W.2d 254, 256 (Iowa 1982).

It is well established that the purposes of compensatory and punitive damages are distinct. *Katko v. Briney,* 183 N.W.2d 657, 662 (Iowa 1971). Hyslop argues that because the issues were tried together the jury could not divorce itself from the evidence of Hyslop's conduct when determining compensatory damages and therefore awarded plaintiff greater compensatory damages than if the issues had been severed.

■ We do not find an abuse of discretion. The trial court could reasonably have

concluded that severance of the issues would result in two trials. It could also have concluded that Hyslop's request for severance was made at the eleventh hour—after the completion of the voir dire, but prior to the opening statements. Moreover, the trial court could have reasonably assumed that the jury instruction would adequately protect Hyslop from any potential prejudice. We notice also that the jury arrived at a compensatory damage award that was substantially less than that suggested by plaintiff's expert economist.

V. *Conclusion.* We have considered all of the contentions raised by the parties and we now affirm the judgment of the district court, except that the judgment on punitive damages against McLane is reversed and remanded for a new trial in accordance with this opinion.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.

All Justices concur except UHLEN-HOPP, CARTER and WOLLE, JJ., who concur in part and dissent in part, and REYNOLDSON, C.J., who concurs in the result.

UHLENHOPP, Justice (concurring in part, dissenting in part).

I concur in all of the majority opinion except division II and the result. I would adopt the complicity rule as the majority does, but I would affirm the judgment.

To me, absent the element of driving while intoxicated this would be a negligence case, although a strong one. The added intoxicated driving permits an award of punitive damages against *Hyslop. Sebastian v. Wood,* 246 Iowa 94, 106, 66 N.W.2d 841, 847 (1954). The intoxicated driving, however, does not permit an award of punitive damages against *McLane* without substantial evidence of complicity *regarding the intoxicated driving* in at least one of the respects stated in the Restatement, and such evidence does not appear. Substantial evidence of McLane's complicity regarding Hyslop's *negligence* does appear, but puni-

tive damages are not awarded for negligence only. *Restatement (Second) of Torts* § 908 comment *b* (1977).

We see punitive damage awards in more and more cases; they are becoming commonplace rather than extraordinary. I view this trend with alarm. I think we should allow compensatory damages liberally to compensate prevailing claimants fully for their actual injuries, but we should restrict punitive damages to the truly extraordinary situations in which they are appropriate. *Id.* comment *f.* I agree with the District Judge that as to McLane, this is not a punitive damage case.

CARTER and WOLLE, JJ., concur in this partial concurrence and dissent.