MICHEL, Circuit Judge.
Kurtis Yeoman appeals the January 8, 1997, decision of the Court of Veterans Appeals affirming the determination of the Board of Veterans’ Appeals (the “Board”) that he was not entitled to benefits because his injuries in an automobile accident were caused by his own willful misconduct in driving while drunk and exhausted from lack of sleep arid therefore were not incurred in the line of duty and henee are non-compensable. Yeoman v. Brown, No. 95-851, 1997 WL 768323 (Ct.Vet.App.1997), and In re Yeoman, No. 93-06 782 (Bd.Vet.App. July 26, 1995). Yeoman asserts on appeal that the Court of Veterans Appeals erroneously affirmed the decision of the Board, primarily because the Board unlawfully based its decision on Iowa state law. The appeal was submitted for our decision following oral argument on January 7, 1998. In response to Yeoman’s arguments, we hold that the Court of Veterans Appeals did not commit reversible error because (1) the Board’s reference to Iowa state law was a proper part of its interpretation of “willful misconduct” under the federal regulations, rather than an adoption of Iowa state law, and thus that reference neither exceeded the Board’s authority by creating law, nor violated the publication-by-notice requirements of the Freedom of Information Act (the “FOIA”), 5 U.S.C. § 552 (1994), the notice and comment rule-making procedures of the Administrative Procedure Act (the “APA”), 5 U.S.C. § 553 (1994), or the special requirements for “official notice” of “new evidence” of the APA, 5 U.S.C. § 556(e) (1994); and (2) the willful misconduct regulations of the Department of Veterans Affairs (the “DVA”) are not unconstitutionally vague. We therefore affirm.
BACKGROUND
Yeoman served on active duty with the Navy from May 1990 until he was discharged in March 1992. On November 3, 1990, at about 3:50 a.m., Yeoman was involved in a single car accident while driving home. Injuries he sustained in that accident left him quadriplegic. By his own admissions, Yeoman had consumed six to eight beers over the course of the evening prior to the accident and had not slept for approximately *1445 forty-five hours before the accident itself. During the hours before the accident, while consuming alcohol and while in a self-induced sleep-deprived state, Yeoman chose to drive 250 miles from the Naval Training Center in Great Lakes, Illinois, to his home in Iowa. Shortly thereafter, he chose to drive to another town and then to a friend’s house before starting the return trip to his home just before 3:50 a.m.
The results of tests of his blood alcohol levels conducted in the first few hours after the accident ranged from 0.111 to 0.162 grams of alcohol per deciliter of blood. The physician who examined and questioned Yeoman in the hours after the accident stated that it was obvious that Yeoman had consumed at least a few cans of beer. Additionally, several of the people who had been with him in the hours just prior to the accident testified that he appeared very tired. Yeoman himself admitted that he knew that he was very tired but chose to drive home anyway.
On October 10, 1992, the Department of Veterans Affairs Regional Office (the “RO”) concluded that Yeoman’s injuries had been proximately caused by his own willful misconduct, and that, therefore, his injuries had not been incurred in the line of duty. The payment of veterans benefits for disabilities resulting from a veteran’s own willful misconduct is prohibited by 38 U.S.C. §§ 105(a) and 1110. Accordingly, the RO denied Yeoman veterans disability benefits.
Yeoman appealed the decision to the Board. Pursuant to the rule enunciated in Thurber v. Brown, 5 Vet.App. 119, 126 (1993), the Board informed Yeoman that it intended to rely on evidence beyond that contained in the most recent Statement of the Case or Supplemental Statement of the Case. The Board told him that it intended to rely on two medical treatises: Ivan Diamond, Alcoholism and Alcohol Abuse, in Cecil Textbook of Medicine 44-46 (J.B. Wyngaarden et al. eds., 19th ed.1992) and J.D. Parkes, Sleep and Its Disorders 36 (1985). The Board letter did not, however, inform Yeoman that the Board intended to refer to Iowa state law. Yeoman was given sixty days to submit any evidence, argument, or comment objecting to the Board’s use of the two publications. Yeoman responded that he could be prejudiced by the use of these medical treatises.
On July 26, 1995, the Board determined that the preponderance of the evidence demonstrated that Yeoman’s injuries were the result of his own willful misconduct. In re Yeoman, No. 93-06 782 (Bd.Vet.App. July 26, 1995). In its opinion, the Board made reference to both the Iowa penal statute that provides the legal limit for intoxication and Iowa state case law that provides a three-factor test for determining whether a person’s falling asleep while driving resulted from a wanton and willful disregard for the safety of others.
On January 8, 1997, the Court of Veterans Appeals affirmed the Board’s decision, holding that Yeoman had not demonstrated that the Board had committed either factual or legal error. Yeoman v. Brown, No. 95-851, 1997 WL 768323 (Ct.Vet.App.1997). On February 24, 1997, the Court of Veterans Appeals denied Yeoman’s motion for reconsideration and his motion for review by a panel. In the same decision, the Court of Veterans Appeals dismissed as premature Yeoman’s motion for review by the full court. Judgment was entered by the Court of Veterans Appeals as of the date of that decision, and Yeoman subsequently brought this timely appeal.
DISCUSSION
This court’s appellate jurisdiction and scope of review over decisions of the Court of Veterans Appeals are sharply limited by the very statute that establishes them. See 38 U.S.C. § 7292 (1994). This court may review a decision of the Court of Veterans Appeals with respect to the validity of any statute or regulation (other than a refusal by the Court of Veterans Appeals to review the schedule of ratings for disabilities adopted under 38 U.S.C. § 1155), or any interpretation thereof that was relied upon by the *1446 Court of Veterans Appeals. See id. § 7292(a). Legal determinations by the Court of Veterans Appeals are subject to de novo review by this court. See Premier v. Derwinski, 928 F.2d 392, 393 (Fed.Cir.1991). This court may set aside any regulation or regulatory interpretation relied upon by the Court of Veterans Appeals which is unconstitutional, violative of statute, procedurally defective, or otherwise arbitrary. See id. This court, however, is precluded from reviewing determinations of fact or applications of a law or regulation to particular facts, except to the extent necessary to resolve a constitutional issue. See 38 U.S.C. § 7292(d)(2) (1994). Here, our jurisdiction is not in doubt as Yeoman makes only legal arguments about alleged legal errors in the reliance of the Court of Veterans Appeals on its interpretation of the willful misconduct regulations set forth in 38 C.F.R. §§ 3.1(n) and 3.301.
The present appeal requires this court to determine if the Court of Veterans Appeals erred with respect to its legal premises in affirming the Board’s decision that Yeoman’s injuries were proximately caused by his own “willful misconduct.” Yeoman argues first that the Board committed several legal errors relating to its references to Iowa state law and second, that, in any event, the willful misconduct regulations are unconstitutionally vague.
I.
The Board’s consideration of Iowa state law was a proper part of its interpretation of willful misconduct under the standards mandated by the very regulations defining that term and its relation to drunkenness. Sections 3.1(n)[1] and 3.301[2] of Title 38 of the Code of Federal Regulations, taken together, set forth the various legal standards to be used in order to determine whether an injury has occurred as a result of the veteran’s own willful misconduct.
Section 3.1(n) defines willful misconduct in part as “an act involving conscious wrongdoing or known prohibited action.” Both the phrase “an act involving conscious wrongdoing” and the phrase “known prohibited action,” read for their plain meaning, include actions proscribed by positive authority such as state law. Therefore, the Board properly referred to Iowa state law as an aid to its interpretation of what constitutes “an act involving conscious wrongdoing or known prohibited action.” In a latter portion, section 3.1(n) provides, however, that the “[m]ere technical violation of police regulations or ordinances will not per se constitute willful misconduct.” 38 C.F.R. § 3.1(n)(2). In providing that the “mere technical violation” of “police regulations or ordinances” does not “per se” constitute willful misconduct, the regulation clearly implies that the violation of positive authority such as state statutory or decisional law is relevant to the consideration of what does constitute willful misconduct; and even though the “technical” violation of mere ordinances cannot alone support a finding of willful misconduct, the regulation clearly contemplates the violation of state penal statutes as a highly relevant, if not dispositive, consideration. This is all the more so when, as here, the violations are not just “technical” and when they are aecompa *1447 nied by additional evidence demonstrating that the acts in question constitute misconduct under the regulations.
A. Adoption
The Board’s decision does, inter alia, discuss an Iowa state criminal statute which establishes a blood alcohol level of 0.10 grams per deciliter or above as conclusive proof of illegal intoxication for a person operating a motor vehicle,[3] and Iowa state common law which specifies factors for determining whether a person’s falling asleep while driving resulted from a wanton and willful disregard for the safety of others.[4] However, contrary to Yeoman’s contention here, the Board did not actually adopt Iowa state law, but merely considered it as one factor of many in defining “willful misconduct,” the operative term in the applicable regulation.
Three of Yeoman’s arguments are based upon his mistaken belief that the Board actually adopted Iowa state law and, therefore, are clearly without merit. He argues that in doing so the Board exceeded its authority by creating law, that the Board failed to meet the notice requirements of FOIA, and that the Board failed to comply with the notice and comment rule-making procedures mandated by the APA. Because the Board did not adopt Iowa state law, it did not create law and thus did not exceed its authority. Rather, the Board merely interpreted and then applied the federal regulations, an action well within the scope of its authority. See 38 U.S.C. § 7104 (1994). Similarly, the notice-by-publication provisions of the FOIA are not invoked absent the promulgation of a new rule or regulation. See 5 U.S.C. § 552(a)(1) (1994). Likewise, the notice and comment rule-making provisions of the APA do not apply unless a substantive rule or regulation is adopted, modified or repealed. See 5 U.S.C. § 553(b) (1994). The provisions of the FOIA and the APA cited by Yeoman simply do not apply to the Board’s interpretation of an existing regulation.
B. Official Notice[5] of a Material Fact
Unrelated to the question of adoption of state law, Yeoman argues that the Board did not satisfy the “new evidence” requirements of the APA, 5 U.S.C. § 556(e) (1994).[6] Section 556(e) provides in the relevant part that “[w]hen an agency decision rests on official notice of a material fact not appearing in the evidence in the record, a party is entitled, on timely request, to an opportunity to show the contrary.” 5 U.S.C. § 556(e) (emphasis added). Yeoman contends that section 556(e) required the Board to give him both notice of its intended use of Iowa state law and an opportunity to respond. However, the Board’s use of Iowa state law cannot contravene section 556(e) because the content of Iowa state law concerns law not fact and thus cannot constitute a “material fact” within the meaning of section 556(e) and because, in any event, the Board’s decision did not “rest” on the content of Iowa state law but on the proven facts of Yeoman’s case. Finally, it is questionable whether reference to state law constitutes taking of “official notice” under section 556(e). Reference to the *1448 content of relevant legal authority is merely a routine part of the decisional process of any tribunal, not a taking of “official notice” of additional factual evidence (“material facts”) outside the record.
That Iowa Code § 321J.2 specifies a blood alcohol level of 0.10 as being the legal limit for intoxication and that Iowa common law requires the consideration of three specified factors when determining if falling asleep while driving resulted from a wanton and willful disregard for the safety of the others were not “material facts.” Law cannot be a “material fact.” Facts in this appeal that would have been “material facts” under section 556(e) had they been the subject of “official notice” include, inter alia, the various blood alcohol levels detected after the accident, the number of beers Yeoman had consumed prior to the accident, the number of hours Yeoman had gone without sleep, and the statements of others describing how tired Yeoman appeared just before the accident. None of these facts, however, were the subject of such a pre-deeisionai failure of notice as none of them were brought into consideration by the Board through the use of “official notice”; instead, these facts were proven with ordinary evidence.[7] Further, the Board did not “rest” its decision on the content of either Iowa state common law or Iowa’s penal code. The Board’s decision “rested,” as “rests” is meant in section 556(e), instead on the proven facts of Yeoman’s case, such as those identified above. Thus, section 556(e) was not invoked by the Board’s reference to Iowa state law because the Board’s observations of what blood alcohol level constitutes intoxication in Iowa and of what factors are used in Iowa to evaluate a sleepy driver’s recklessness were neither “material facts” nor the basis on which the Board “rested” its decision.
II.
Yeoman argues that the DVA regulations concerning willful misconduct are unconstitutionally vague and thus void because the regulations do not give fair notice of what actions are prohibited to those persons whose conduct is governed by them and because the regulations are not specific enough to prevent arbitrary and discriminatory enforcement. Essentially, Yeoman requests this court to invalidate the DVA regulations because they do not state every specific act that may constitute willful misconduct and because they do not state the exact criteria, including quantitative measures, such as blood alcohol levels, that will be used to establish the occurrence of each possible type of willful misconduct including those relating to drunken and sleep-deprived motor vehicle operators. However, the vagueness doctrine does not require that regulations achieve such near mathematical certainty. See Grayned v. City of Rockford, 408 U.S. 104, 110, 92 S.Ct. 2294, 2299-2300, 33 L.Ed.2d 222 (1972). Statutes and regulations must necessarily be written in such a way as to be able to “deal with untold and unforeseen variations in factual situations.” Boyce Motor Lines, Inc. v. United States, 342 U.S. 337, 340, 72 S.Ct. 329, 330-31, 96 L.Ed. 367 (1952); see also Grayned, 408 U.S. at 110, 92 S.Ct. at 2299-2300 (regulations may incorporate “flexibility and reasonable breadth, rather than meticulous specificity”). We conclude that the DVA’s regulations covering willful misconduct are sufficiently articulated that an ordinary service member such as Yeoman could understand and comply with them through the exercise of ordinary common sense. Nor, as applied here, were the regulations arbitrary. Any service member would know he could not drive so many hours after so many beers on so little sleep without undue risk to himself and others and thus without committing willful misconduct. Given the facts proven here, any member of the Board would reasonably find willful misconduct on the basis of these facts, rather than on the basis of arbitrary or discriminatory considerations, as argued by Yeoman.
*1449 CONCLUSION
For these reasons, we hold that the Court of Veterans Appeals did not commit any legal error in affirming the decision of the Board of Veterans’ Appeals. Therefore, the decision of the Court of Veterans Appeals is

AFFIRMED.

. 38 C.F.R. § 3.1(n) states in pertinent part that: IwWful misconduct means an act involving conscious wrongdoing or known prohibited action (1) It involves deliberate or intentional wrongdoing with knowledge of or wanton and reckless disregard of its probable consequences. (2) Mere technical violation of police regulations or ordinances will not per se constitute willful misconduct. (3) Willful misconduct will not be determinative unless it is the proximate cause of injury----

. 38 C.F.R. § 3.301 states in pertinent part that:
[djirect service connection may be granted only when a disability or cause of death was incurred or aggravated in line of duly, and not the result of the veteran's own willful misconduct____ Disability pension is not payable for any condition due to the veteran’s own willful misconduct____ The simple drinking of alcoholic beverage is not of itself willful misconduct. ... If, in the drinking of a beverage to enjoy its intoxicating effects, intoxication results proximately and immediately in disability or death, the disability or death will be considered the result of the person’s willful misconduct.

. Iowa Code § 321J.2 (1994).

. The Board cited Briner v. Hyslop, 337 N.W.2d 858 (Iowa 1983). The three factors specified therein are the driver's knowledge of his condition, whether or not the driver persisted in driving despite the danger, and the length of time the driver had been driving. See id. at 868.

. Yeoman’s arguments and this discussion only deal with the procedure for "official notice" by an administrative adjudicator pursuant to 5 U.S.C. § 556(e). Neither Yeoman’s arguments nor this discussion deal with the procedure for "judicial notice” set forth in rule 201 of the Federal Rules of Evidence.

.We note that the question whether section 556(e) applies to adjudication within the DVA has not yet been resolved. See Thurber v. Brown, 5 Vet.App. 119, 125 (1993). Because we conclude, however, that the Board’s notice of Iowa state law was neither a "material fact” nor one upon which the Board "rested” its decision and that, therefore, the Board did not err even assuming the applicability of section 556(e), we need not and do not reach the question of whether section 556(e) applies.

. Yeoman was notified of the Board’s intention to rely on the two medical publications and permitted to respond, which he did. Thus, the requirements of section 556(e) were met with respect to this evidence. As the applicability of section 556(e) to DVA adjudication has not been determined, the Board’s notification of Yeoman was done pursuant to the Thurber doctrine, the requirements of which largely mirror section 556(e). See Thurber v. Brown, 5 Vet.App. 119, 126 (1993).