NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**ROY H. MCFARLAND,**
*Claimant-Appellant,*

v.

**ERIC K. SHINSEKI, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee.*

---

2011-7062

---

Appeal from the United States Court of Appeals for Veterans Claims in Case No. 09-3131, Judge Alan G. Lance, Sr.

---

Decided: November 4, 2011

---

DARLA J. LILLEY, Lilley Law Firm, P.L.L.C., of Daingerfield, Texas, for claimant-appellant.

NELSON R. RICHARDS, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent-appellee. With him on the briefs were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and MARTIN F.

HOCKEY, JR., Assistant Director. Of counsel on the brief were DAVID J. BARRANS, Deputy Assistant General Counsel, and TRACY P. WARREN, Attorney, United States Department of Veterans Affairs, of Washington, DC.

_____

Before NEWMAN, CLEVENGER, and O'MALLEY, *Circuit Judges.*

NEWMAN, *Circuit Judge.*

This appeal is from the decision of the United States Court of Appeals for Veterans Claims, denying the veteran's claims for compensation for injuries in an automobile accident.[1] The veteran, Roy H. McFarland, served on active duty in the United States Army from June 1953 to April 1955. On December 24, 1953, at about 9:00 p.m., Private McFarland was involved in a motor vehicle accident in Banks, Arkansas, and sustained fractures of the left femur, the left talus, and the right femur. He also sustained lacerations of the right ear, right eyebrow, and left forearm. The police report states that he was exceeding the speed limit and driving on the wrong side of the highway. The report estimated his speed as 70 miles per hour, while the lawful limit was 60 miles per hour. The other vehicle was estimated at 40 miles per hour at the moment of the accident. The initial Army investigation found that there was "no evidence that subject was intoxicated or guilty of misconduct." R. 389; App. 25. However, the Army reviewing authority later issued a substitute finding that the accident was not in the line of duty because "[t]he evidence submitted is not legally sufficient to support the findings that the injury sustained by [the appellant] was in line of duty -- not due to misconduct." R. 401; Supp. App. 8.

_____

[1] *McFarland v. Shinseki*, No. 09-3131 (Vet. App. Dec. 13, 2010).

In August 1955, the veteran filed a claim with the Regional Office ("RO") seeking service connection for residuals of a broken right knee, left leg, and left foot, due to the December 24, 1953 accident. In March 1956, the RO held that at the time of the accident appellant "was exceeding the lawful speed," and that the evidence showed that he was "on the wrong side of the road when he had a head-on collision with the other parties" and "[t]here was no improper driving or violation of any laws indicated on the part of the other car or [its] driver . . . ." The RO observed that "the Army reviewing authority held that the disabilities were not incurred in line of duty, and were due to the veteran's own misconduct." The RO acknowledged that "VAR 1065(C) states in part that wil[l]ful misconduct must involve conscious wrongdoing or known prohibited action," and reasoned that "[t]he reckless manner in which this veteran was driving his automobile around a curve at the time of the accident constitutes wil[l]ful misconduct." Accordingly, the RO denied the requested benefits. No. c-18 917 934; App. 28. The veteran did not appeal.

In 2005 the veteran filed a claim for compensation based on individual unemployability. The veteran submitted a motion to revise the 1956 RO decision based on clear and unmistakable error ("CUE"), arguing that he had not engaged in "willful misconduct" because he had committed only a minor traffic violation, and his conduct was not deliberate or intentional. On August 10, 2009 the Board of Veterans' Appeals denied the motion, finding no clear and unmistakable error of fact or law in the RO decision of March 1956. The Board reasoned that:

> The RO decision in March 1956 weighed the evidence and did not find that the Veteran committed a mere technical violation of police regulations or ordinances, but determined that he acted in a reckless

manner. In applying 38 C.F.R. §3.65, which was the pertinent regulation for willful misconduct in March 1956, it was reasonable to conclude that the Veteran's driving demonstrated willful misconduct. A disagreement over how the evidence was weighed or evaluated does not constitute clear and unmistakable error in the rating decision by the RO. The Board finds that there was no evidence of an undebatable error that would have manifestly changed the outcome of the RO's decision. And there is no evidence that the standard of willful misconduct was applied improperly by RO in March 1956 or that the correct facts were not before the adjudicator.

No. 06-06 708, op. at 9.

The Court of Appeals for Veterans Claims affirmed the Board's finding of no CUE. The court explained that "[w]hile the appellant may be dissatisfied with how the RO weighed the evidence in finding willful misconduct, such a disagreement is insufficient to constitute CUE." The court cited 38 C.F.R. §20.1403 as explaining that CUE is "a very specific and rare kind of error . . . that when called to the attention of later reviewers compels the conclusion, to which reasonable minds could not differ, that the result would have been manifestly different but for the error." No. 09-3131, op. at *3. In *Yates v. West*, 213 F.3d 1372, 1375 (Fed. Cir. 2005), this court stated that "the clear and unmistakable error provision applies when the facts compel the conclusion to which reasonable minds could not differ, that the result would have been manifestly different but for the error."

The veteran appeals to this court, arguing that the Board and the Veterans Court misinterpreted 38 C.F.R.

§3.65 as strict liability. That section, titled "Willful misconduct," states in part:

> (a) A finding in any case that a disabling condition is of willful misconduct nature . . . will bar any right to pension or compensation . . . . [A]n act to be one of "willful misconduct" must be 'malum in se' or 'malum prohibitum' if involving conscious wrongdoing or known prohibited action. (Mere technical violation of police regulations or ordinances will not per se constitute "willful misconduct" but are factors for consideration in light of the attendant circumstances.)

38 C.F.R. §3.65 (1956).

The veteran argues that "the proper interpretation of 38 CFR §3.65(a) was that the VA had to address mens rea before it could deny a VA claim on the basis of willful misconduct. 38 C.F.R. §3.65(a) did not allow for a finding of willful misconduct on a strict liability basis . . . . But neither the BVA nor the CAVC included this element in reaching their decisions. Instead, they applied §3.65(a) as if it were strict liability." Br. of Appellant at 11.

Willful misconduct requires some degree of mens rea or scienter. *See Allen v. Principi*, 237 F.3d 1368, 1378 (Fed. Cir. 2001) (the VA has "construed the term 'willful misconduct' to refer to an act of conscious wrongdoing, involving elements of intent and voluntariness."). Section 3.65's successor provision, 38 C.F.R. §3.1(n)(1), was amended in 1963 to elaborate that willfulness "involves deliberate or intentional wrongdoing with knowledge of or wanton and reckless disregard of its probable consequences." 28 Fed. Reg. 320 (1963). Other courts have similarly interpreted the term, *see, e.g.*, *In re Korean Air Lines Disaster of Sept. 1.*

*1983*, 932 F.2d 1475, 1479 (D.C. Cir. 1991) (explaining that "willful misconduct is the intentional performance of an act with knowledge that the act will probably result in an injury or damage, or in some manner as to imply reckless disregard of the consequences of its performance").

No misinterpretation of §3.65(a) appears in the challenged rulings. Neither the RO, nor the Board, nor the Veterans Court interpreted 38 C.F.R. §3.65 as "strict liability." The Veterans Court observed that it "is clear that §3.65(c) allowed the RO to take the circumstances of the events into consideration when rendering its decision." The Board correctly stated that in "determining whether an act was due to willful misconduct, generally, the precedents were to the effect that for an act to be one of willful misconduct it must be 'malum in se' or 'malum prohibitum' if involving conscious wrongdoing or known prohibited action," and that "[m]ere technical violation of police regulations or ordinances will not per se constitute willful misconduct but are factors for consideration in light of the attendant circumstances." No. 06-06 708, op. at 8. The Board observed that the "RO decision in March 1956 weighed the evidence and did not find that the Veteran committed a mere technical violation of police regulations or ordinances, but determined that he acted in a reckless manner." *Id.* at 9. The RO found that the reckless manner in which the veteran was driving amounted to willful misconduct, acknowledging that willful misconduct "must involve conscious wrongdoing or known prohibited action." No. c-18 917 934. These findings of fact are not reviewable by the Federal Circuit; the correct law was recited, and was applied.

Appellant argues that applying the correct law to the undisputed facts could not lead to a finding of willful misconduct, and thus that the issue may be decided "as a matter of law," citing *Groves v. Peake*, 524 F.3d 1306 (Fed. Cir.

2008). The veteran argues that there is no evidence that he purposely drove over the speed limit or on the wrong side of the road. However, the RO's finding that the veteran was driving over the speed limit on the wrong side of the road in a reckless manner, was supported by the evidence; we lack jurisdiction to reweigh the evidence. *See* 38 U.S.C. §7292(d)(2); *Conway v. Principi*, 353 F.3d 1369, 1372 (Fed. Cir. 2004).

The veteran also argues that the RO committed clear and unmistakable error in failing to consider the relevant "positive law," citing *Yeoman v. West*, 140 F.3d 1443 (Fed. Cir. 1998), where in interpreting the willful misconduct provision 38 C.F.R. §3.1(n), this court held that the Board properly referred to state law as an aid to determining willful misconduct, stating:

> In providing that the "mere technical violation" of "police regulations or ordinances" does not "per se" constitute willful misconduct, the regulation clearly implies that the violation of positive authority such as state statutory or decisional law is relevant to the consideration of what does constitute willful misconduct; and even though the "technical violation of mere ordinances cannot alone support a finding of willful misconduct," the regulation clearly contemplates the violation of state penal statutes as a highly relevant, if not dispositive, consideration.

*Id.* at 1446. The veteran argues that the Veterans Court "implicitly found that the Board was not required to consult old VA or state law when assessing whether the VA appropriately applied §3.65 in 1956." Brief of Appellant at 12. We agree that such consultation is not required, for *Yeoman* held only that the Board did not err in considering the applicable state law as an aid in the willful misconduct

analysis, it did not establish a rule that state law must be considered and discussed in all cases. Here, the regional office and the Board considered the veteran's state-law violations as recorded for this accident, and adverted to his driving over the speed limit and driving on the wrong side of the road as bases of misconduct. The veteran has not directed us to any facts or law, whose review might be within our jurisdiction, that would "manifestly change the outcome" of the prior decision, as is required for a showing of clear and unmistakable error. *See Bustos v. West*, 179 F.3d 1378, 1381 (Fed. Cir. 1999).

CONCLUSION

Applying the statutory standard of review, we discern no error in the decision of the Veterans Court.

Each party shall bear its costs.

**AFFIRMED**